## Strassburger et al. v. Johnson, Secretary of Commonwealth.

*John R. Geyer* and *Paul G. Smith,* for plaintiffs.

*Leon D. Metzger,* Deputy Attorney-General, and *William A. Schnader,* Special Deputy Attorney-General, for defendant.

HARGEST, P. J.—This case is presented upon a petition for mandamus, a return thereto and evidence taken.

The questions raised are: *(a)* Whether the affidavit required of a candidate to a nominating petition may be made by an attorney-in-fact; and *(b)* whether, when so made, it may be amended by filing a photo radiogram of an affidavit by the candidate himself, to be followed by the filing of the original affidavit.

On March 3, 1928, petitions were presented to the Secretary of the Commonwealth to have the name of Ralph Beaver Strassburger certified to the commissioners of the several counties of the Commonwealth to be printed upon the official ballot of the Republican Party as a candidate for the office of

delegate-at-large to the National Republican Convention. These petitions contain the delegate's statement and the candidate's affidavit, signed "Ralph Beaver Strassburger, by Norman B. Wamsher, attorney." Subsequently, a somewhat more amplified affidavit was presented to the Secretary of the Commonwealth, signed in the same way. There was also presented to the Secretary of the Commonwealth an affidavit of Chester G. Burden, who says that he is the Secretary of the Commercial Cable Company; that said company maintains offices in New York and Paris, and that, on Feb. 29, 1928, there was received at the New York office from Paris a cable message which was quoted in full and which purports to be a power of attorney acknowledged before the Vice-Consul of the United States in Paris, reading, in part, as follows:

"I, Ralph Beaver Strassburger, . . . have made, constituted and appointed and by these presents do hereby make, constitute and appoint Norman B. Wamsher, Norristown, Pennsylvania, my true and lawful attorney for and in my name, place and stead, to sign each and all petitions of the qualified electors to have my name as candidate printed on the official ballot for the primary election to be held on Tuesday, April 24, 1928, for delegate-at-large to the Republican National Convention, and which petition shall be filed by March 5, 1928, in accordance with the primary statutes giving and granting unto the said attorney, Norman B. Wamsher, Norristown, Pennsylvania, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as he might or could do if personally present."

There is also offered in evidence what is called by the expert on the subject a photo radiogram of an affidavit purporting to have been signed by Ralph Beaver Strassburger and sworn to before William N. Carroll, Vice-Consul of the United States at London, England. The offer of this paper is to be followed by the subsequent filing with the Secretary of the Commonwealth of the original affidavit.

It appears from the evidence that the plaintiff, Ralph Beaver Strassburger, is, and has been, in Europe since Dec. 11, 1926; that, prior to Feb. 17th, he was in telephonic communication with Mr. Wamsher in reference to his becoming a candidate as delegate-at-large to the National Republican Convention, but gave no definite instructions and took no definite steps toward that end until Feb. 28, 1928, too late for him to be in the United States before March 5th, the last day for filing nominating petitions.

(a) The first question for our consideration is whether an affidavit of the character required of a candidate may be made by an attorney-in-fact.

The Act of July 12, 1913, P. L. 719, regulates how nomination petitions, containing affidavits made as to the signatures of the signers, shall be signed, and provides, in section 6, in part, as follows:

"(b) Each candidate for any State, county or city office shall file, with his nomination petition, his affidavit stating his residence, with street and number, if any, and his post-office address, his election district, the name of the office for which he consents to be a candidate, that he is eligible for such office, and that he will not knowingly violate any election law or any law regulating and limiting nomination and election expenses and prohibiting corrupt practices in connection therewith."

Section 8 of said act also provides, in part: "No nomination petition shall be refused or set aside except for (a) material error or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or (b) material alterations made after signing, without the consent of the

signers; or *(c)* want of a sufficient number of genuine signatures of persons qualified, with respect to age, sex, residence and citizenship, to be electors. . . .

"If the matters objected to are such as are specified in subdivision *(a)* of this section, the court, upon hearing the case, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs as the said court may specify."

Upon the general proposition as to affidavits by attorneys-in-fact, the authorities seem to be conflicting. In 1 Ruling Case Law, "Affidavits," § 4, page 762, the general rule is stated as follows: "Where a statute points out who may make a certain affidavit, it can be made by none other than those specified, even though there is nothing in the language of the statute to show that its enumeration was intended to be exclusive. The mere designation itself excludes all others, and the general principle that what a party may do in person he may do by agent has no application here, for the making of an oath to a statement of facts cannot be delegated. Consequently, such statutes as do not in terms expressly authorize an affidavit to be made by an agent or attorney have generally been held to exclude them."

But in 2 Corpus Juris, "Affidavits," page 321, it is said: "In the absence of any statute or rule of court to the contrary, it is generally held that an affidavit may properly be made by an agent or attorney having knowledge of the facts sworn to."

In Sleeper *v.* Dougherty, 2 Whart. 177, 178, construing the Act of March 28, 1835, P. L. 88, requiring affidavits of defense, it is held that where the act requires the defendant to file an affidavit of defense, it may be taken by some one, other than the defendant, having knowledge of the facts. The court said: "The terms of the act are most guarded. It directs that the defendant shall file, not that he shall make, as well as file, the affidavit." The case just cited refers to the case of Bryan *v.* McCulloch, 1 P. & W. 421, where the Supreme Court held that the words of the act there under consideration "peremptorily require the affidavit to be made by the party," and that, therefore, it could not be made by some one else. The Practice Act of May 25, 1887, P. L. 271, provides that the defendant shall "file an affidavit of defense on or before the return-day." Such language does not exclude an affidavit by some other than the defendant. It clearly authorizes one having knowledge of the facts to make it: Hunter *v.* Reilly, 36 Pa. 509, 511; Burkhart *v.* Parker, 6 W. & S. 480; Griel *v.* Buckius, 114 Pa. 187, 190; Horsuch *v.* Fry, 23 Pa. Superior Ct. 509, 511; Safety Banking and Trust Co. *v.* Conwell, 28 Pa. Superior Ct. 237, 238; Citizens Natural Gas Co. *v.* Waynesburg Natural Gas Co., 210 Pa. 137. But the Act of 1913 provides that the candidate shall file "his affidavit," and under the case of Bryan *v.* McCulloch, *supra*, we must conclude that the statute means what it says, and if there is any correction to be made the legislature must make it.

There is another reason why the affidavit required by the Act of 1913 cannot be made by an attorney-in-fact. Under this act, the affidavit contains not only the statement of facts as to residence and eligibility, but also contains the personal promise of the candidate that he will not knowingly violate any election law or any law regulating and limiting nomination and election expenses and prohibiting corrupt practices in connection therewith. It is one thing to file an affidavit as to facts to prevent a summary judgment without trial; it is quite another thing to secure a personal privilege by a promise of moral conduct under oath. How could the attorney-in-fact in this case commit the conscience of his principal to any course of conduct and swear that the candidate will not knowingly violate, in the future, any election law or

law regulating election expenses? Where affidavits are authorized to be made by some one other than the principal, they are limited to facts that are past, of which the affiant has knowledge, and not to future conduct. We have not been pointed to any case in which it has been held that such an affidavit can be made by a substitute. There is one case which seems to clearly indicate that it cannot be so made: Haddon *v.* Larned, 10 S. E. Repr. 278 (Ga., 1889). In that state, the statute provided: "In all cases where claimants are unable to give bond and security, as now required by law, in claim cases, it shall and may be the privilege of such claimants to file, in addition to the oath now required, an affidavit as follows: 'I, A. B., do swear that I do not interpose this claim for delay only; that I *bona fide* claim the right and title to the same; that I am advised and believe that said claim will be sustained; and that from poverty I am unable to give bond and security, as now required by law."

We quote and adopt the language of that great jurist of Georgia, Chief Justice Bleckley, who has impressed himself upon the jurisprudence of this country, as follows: "By the terms of the statute, it is not the *bona fides*, the belief or the poverty of an agent that will suffice, but the *bona fides*, belief and poverty of the claimant; and these must be sworn to positively and not merely according to belief. How can an agent swear positively to the *bona fides* or belief of his principal? These are moral conditions—conditions of mind and consciousness which cannot be known beyond the limits of the consciousness under examination. This beneficent statute would be open to great abuse were it within the power of any and every claimant to decline swearing to his own mental state, and commit the exposition thereof to his agent, who might or might not be conscientious. The agent would be competent to swear to his own condition of mind positively. But that is not the thing on which the privilege granted by the statute depends. It is the condition of mind of the claimant; as to which the agent could have belief, but not certain knowledge."

Would either the attorney-in-fact or the principal be guilty of perjury if the principal subsequently violated the election laws or the Corrupt Practice Act? Following the rule of strict construction of criminal statutes, we think they could not. We think it would be very dangerous in principle to stretch the plain language of that statute and hold that such an affidavit could be made by an agent or attorney as well as by the principal. Moreover, we may also say, in passing, that even if such an affidavit could be made by an attorney-in-fact, the proof of authority to make it was lacking and the Secretary of the Commonwealth was justified in refusing it. Where telegrams are relied upon to establish contracts, they must be proved in the same manner as other writings: Reininger *v.* Besley (Ariz.), 141 Pac. Repr. 574, 575; Oregon Steamship Co. *v.* Otis (N. Y.), 3 N. E. Repr. 485, 487; Reynolds *v.* Hinrichs (S. D.), 94 N. W. Repr. 694, 695; Cobb *v.* Glenn Boom and Lumber Co. (W. Va.), 49 S. E. Repr. 1005, 1008. The affidavit of Chester G. Burden, who says that he is Secretary of the Commercial Cable Company, does not say that Ralph Beaver Strassburger sent, or caused to be sent, the cable which contains a power of attorney; it simply says that what purports to be the power of attorney was received at the office of the Commercial Cable Company in New York from Paris.

It follows that the Secretary of the Commonwealth was justified in refusing to file the nominating petitions.

*(b)* Are the petitions amendable? The Secretary of the Commonwealth contends they are not amendable because the statute provides no method of amendment except when objections are filed and that the court has no power

to amend in proceedings in mandamus; that our only inquiry is whether or not the secretary was justified in refusing the papers at the time they were refused, and, if so, the petition for a mandamus must be dismissed. We think that construction is too narrow. The election laws must be administered in the interest of the electors.

In the case of Com. ex rel. Phelan *v.* Secretary of Commonwealth, 5 Dist. R. 662, in a proceeding in mandamus, this court, without discussing the question, permitted an amendment. When the matter is squarely before us in mandamus and we find nomination petitions have been refused for defects that are amendable, we think it is the clear duty of this court to permit such amendments; otherwise, we would not be enforcing the law regulating nominations.

But the question before us now is whether there is anything to amend. If the absence of the candidate's affidavit is a material error or defect apparent on the face of the paper or "on the face of the appended or accompanying affidavit," the court may permit the amendment; if it is not, then there is no power to amend. The power to amend has been somewhat liberally construed. Where the candidate has actually made an affidavit, but not exactly in the language of the statute, it may be amended: Abbott's Nomination, 1 D. & C. 600. So, where the affidavits have been made to some, but not all, of the signatures (Hosenfeld's Nomination, 23 Dauphin Co. Reps. 148; 29 Dist. R. 510, 620; Morin's Petition, 19 Dauphin Co. Reps. 182; 26 Dist. R. 760; Lauler's Petition, 19 Dauphin Co. Reps. 181); where the affidavit was actually made but was defective on its face (Hosenfeld's Nomination, *supra*); where the attesting magistrate failed to fill up the blank (Com. ex rel. Phelan *v.* Secretary of Commonwealth, *supra*); or where the signature of the notary was blurred: Flynn's Petition, 23 Dauphin Co. Reps. 96; 29 Dist. R. 486. The present case, however, presents no such material error or defect on the face of appended or accompanying affidavits. There is no affidavit made by the candidate. Therefore, there is nothing on the face of an appended or accompanying affidavit to amend.

In Emerick's Petition, 23 Dauphin Co. Reps. 135, this court held that where the petition was not signed by the required number of qualified electors, there could be no amendment, because to allow an amendment in such a case would be legislation. In effect it would be permitting the filing of a petition subsequent to the last day fixed by the act of assembly for filing such petitions. We think the absence of an affidavit by the candidate is in the same category. There is the absence of an integral requirement to make a valid nomination petition. To supply that requirement after the lást day for filing such petitions would be supplementing the petition and not amending it.

There has been offered in evidence what is called a photo radiogram of an affidavit which purports to have been taken by Ralph Beaver Strassburger before William N. Carroll, Vice-Consul of the United States of America, at London, England, on March 7, 1928. The evidence shows the very interesting way in which the paper offered, purporting to be an affidavit, was taken and signed in London and reproduced in New York. But what is submitted, however refined and scientific we may be in our discussion of it, is nevertheless an enlarged photograph of the paper in London, reduced again for convenience by photographic process to its original size. The signature of Ralph Beaver Strassburger has been proven. What purports to be the signature of William N. Carroll, Vice-Consul, has not been proven or authenticated by any visible seal. There appears to be a very dense, round, black place on the photo radiogram which may have a seal impressed on it, but which does not appear from inspection or examination. In any event, the paper presented

to us is in effect a photograph. We could not, under our present laws, receive in evidence a photograph of an affidavit made in Philadelphia if the original is in existence. So we think the photograph, although it may be scientifically called by another name, of the affidavit made in London cannot, under our law as it now is, be legally received.

Be this as it may, we do not base our decision upon the rejection of this paper, but upon the broad ground that the papers presented to the Secretary of the Commonwealth are void and not amendable because they contain no affidavit of the candidate, as required by the statute. It follows that the Secretary of the Commonwealth was right in not filing them.

It is for these reasons that we have heretofore refused the peremptory mandamus and dismissed the petition at the cost of the petitioner.

From Homer L. Kreider, Harrisburg, Pa.